1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONNA KRIEG,

          Plaintiff,

  v.

U.S. FOODSERVICE, INC.,

          Defendant.

_____/

No. C 10-02491 WHA

**ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

**INTRODUCTION**

In this disability and age discrimination action, defendant moves for summary judgment

on all claims, and plaintiff moves for summary judgment on one claim. For the reasons set forth

below, and after careful consideration of the supplemental submissions, defendant's motion is

**GRANTED**, and plaintiff's motion is **DENIED**.

**STATEMENT**

Plaintiff Donna Krieg was hired by defendant U.S. Foodservice, Inc., a private company,

in April 2004. From June 2006 until the termination of her employment in December 2008,

plaintiff worked as a clerical assistant in the finance department at its San Francisco division

(Maechtlen Exh. A at 45–47, 50, 137).

As a clerical assistant, "invoice scanning" was "the majority of [plaintiff's] job," making

up about "95 percent" of what she did (*id.* at 51–52). Invoices were "brought to [her] in mail

crates." She would gather bunches of invoices from the same date and then "put them in the

United States District Court
For the Northern District of California

1    scanner and make sure they [were] not torn or ripped." She repaired any tears or rips she found.

2    After the invoices were scanned, plaintiff "would bundle them and put a cover sheet on it." She

3    would place the bundle of scanned invoices into a box on the left side of her desk and then repeat

4    the process with a new set of invoices gathered from the mail crates. When the box of completed

5    bundles became full, plaintiff "picked up the box and moved it to the left of [her work area] near

6    the window" — a distance of "[m]aybe three feet" (*id.* at 54–62). Plaintiff typically produced

7    three boxes of completed bundles per day; each box corresponded to one crate of invoices

8    (*id.* at 106–07).

9         In March 2008, representatives from defendant's corporate offices began discussing with

10   division managers goals for closing the gap between projected income and actual income in the

11   wake of the national economic recession (Monier Decl. ¶ 7). In June 2008, defendant purchased a

12   proof-of-delivery system, which made the majority of defendant's billing process paperless,

13   supposedly eliminating the need for a full-time employee to manually scan invoices (*id.* at ¶ 8).

14   In October 2008, corporate representatives and division managers began discussing the need to

15   downsize defendant's labor force due to defendant's economic circumstances (*id.* at ¶ 10).

16   In November 2008, plaintiff's job supposedly was selected for elimination by the end of the

17   calendar year (*id.* at ¶ 11).

18        On the morning of December 4, 2008, plaintiff injured her back at work. She bent over to

19   pick up a crate of invoices, grabbed it by the holes on the sides, brought it up, and then "felt

20   excruciating pain" (Maechlen Exh. A at 107–08). Plaintiff immediately reported the injury to her

21   supervisor, took some painkillers from a first aid kit in the employee lounge, and then returned to

22   her scanning duties (*id.* at 111–12). Later that day, plaintiff saw Dr. Nord, "the doctor that U.S.

23   Food sends employees who have injured themselves" (*id.* at 115). Dr. Nord released plaintiff to

24   return to work with the restrictions of not lifting more than five pounds and not bending or

25   stooping for the period of December 4 through December 8 (*id.* at 120, Exh. 25).

26        During the period of December 4 through December 8, plaintiff continued to perform her

27   job within the restrictions from Dr. Nord. Plaintiff carried invoices from the mail crates to her

28   workstation in small, lightweight stacks, and a coworker removed the boxes of completed invoice

bundles from plaintiff's desk (*id*. at 132–34).  On December 8, plaintiff saw Dr. Nord again.  At this second visit, Dr. Nord released plaintiff to return to work with the restrictions of not lifting more than eight pounds and no frequent bending or lifting for the period of December 8 through December 15 (*id*. at 124–25, Exh. 25).  Plaintiff continued to perform her job, as modified, during that period.  On December 15, plaintiff saw Dr. Nord a third time and was released to work with the same restrictions through December 22 (*id*. at 126–27, Exh. 25).  On December 17, however, plaintiff was told by her supervisor and a human resources representative that her job had been eliminated.  Her employment with defendant ended that day (*id*. at 137–38).

In December 2009, a little over a year later, plaintiff filed this action in the Alameda Country Superior Court.  Defendant removed the action here in June 2010 on the basis of diversity jurisdiction.  The complaint asserts five claims for relief:  (1) disability discrimination; (2) failure to accommodate disability; (3) wrongful termination in violation of public policy; (4) intentional infliction of emotional distress; and (5) age discrimination (Dkt. No. 1).  Defendant now moves for summary judgment on all five claims, and plaintiff moves for summary judgment on the claim for failure to accommodate disability (Dkt. Nos. 40, 54).

This order follows full briefing, a hearing, and supplemental discovery and briefing.  Plaintiff, who did not take any depositions during the discovery period, was allowed to take two depositions after the summary judgment hearing due to the appearance of possible discovery stonewalling by defendant.  Each side submitted supplemental briefing and evidence after the depositions.

**ANALYSIS**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).  A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory statements without factual support cannot defeat summary judgment.  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   Where the party moving for summary judgment would bear the burden of proof at trial,

2   that party bears the initial burden of producing evidence that would entitle it to a directed verdict

3   if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,

4   213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not

5   bear the burden of proof at trial, that party bears the initial burden of either producing evidence

6   that negates an essential element of the non-moving party's claims, or showing that the non-

7   moving party does not have enough evidence of an essential element to carry its ultimate burden

8   of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

9   (9th Cir. 2000). If the moving party satisfies its initial burden, then the non-moving party must

10  produce admissible evidence to show there exists a genuine issue of material fact. *Id.* at 1102–03.

11      **1.    CLAIM FOR AGE DISCRIMINATION.**

12   Plaintiff, who is 62 years of age, alleges that defendant violated California's Fair

13  Employment and Housing Act by subjecting her to "less favorable terms and conditions of

14  employment than afforded similarly situated younger employees because of her age"

15  (Compl. ¶¶ 56–70). "California has adopted the three-stage burden-shifting test established by

16  the United States Supreme Court for trying claims of discrimination, including age

17  discrimination, based on a theory of disparate treatment." *Guz v. Bechtel Nat'l, Inc.*,

18  24 Cal. 4th 317, 354 (2000). *First*, plaintiff has "the initial burden to establish a prima facie case

19  of discrimination." *Second*, if "plaintiff establishes a prima facie case, a presumption of

20  discrimination arises" and "the burden shifts to the employer to rebut the presumption." *Third*, if

21  the employer successfully rebuts the presumption, then "the presumption of discrimination

22  disappears" and "plaintiff must then have the opportunity to attack the employer's proffered

23  reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive."

24  *Id.* at 354–56.

25   To make a prima facie showing of age discrimination, plaintiff must prove (1) that she

26  was more than forty years of age, (2) that she was performing competently as a clerical assistant,

27  (3) that she suffered an adverse employment action, and (4) that some other circumstance

28  suggests discriminatory motive for the adverse action. CAL. GOV'T CODE § 12926(b);

1    *Guz*, 24 Cal. 4th at 355.  Defendant asserts that plaintiff cannot carry her burden of establishing a

2    prima facie case of age discrimination because no evidence suggests a discriminatory motive for

3    plaintiff's termination.  Defendant argues, for example, that plaintiff's deposition is devoid of any

4    testimony indicating that she lost her job because of her age (Br. 14–15).

5         In response, plaintiff does not cite any evidence that would support an inference of

6    discriminatory motive.  Plaintiff claims that she was fired "in retaliation for [her] exercise of

7    protected rights under California law," but this conclusory statement is unsupported by *any*

8    citation to the factual record (Opp. 16).  Pure lawyer argument cannot defeat summary judgment.

9    *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district

10   court need not examine the entire file for evidence establishing a genuine issue of fact, where the

11   evidence is not set forth in the opposing papers with adequate references so that it could

12   conveniently be found.").

13        Plaintiff also argues that defendant's stated reasons for terminating plaintiff's

14   employment — that her job was eliminated by the new proof-of-delivery system and as part of a

15   company-wide layoff program — were merely pretext.  The question of pretext, however, is the

16   third step of the discrimination analysis.  It is not considered unless plaintiff identifies a prima

17   facie case of discrimination *and* defendant provides a legitimate reason for its action.  Because

18   plaintiff fails to establish a prima facie case of discrimination at the first step of the analysis, the

19   question of pretext is not reached.  *See Guz*, 24 Cal. 4th at 354 (explaining that the first step of the

20   analysis "is designed to eliminate at the outset the most patently meritless claims").  Plaintiff's

21   supplementary brief cites new evidence, arguing that factual questions now exist as to whether

22   defendant's stated reasons for firing plaintiff were pretext.  Again, however, pretext is step three.

23   Plaintiff's supplemental brief and opposition brief both neglect step one.  They cite no evidence

24   from which a trier of fact could infer a discriminatory motive.

25        The fact that plaintiff was over forty years of age when her employment was terminated is

26   not enough to make a prima facie showing of age discrimination.  *See Guz*, 24 Cal. 4th at 355.

27   Plaintiff does not contest that a prima facie showing of discrimination requires *some circumstance*

28   suggesting discriminatory motive, even if there is no direct evidence of discrimination (Opp. 15).

**United States District Court**
For the Northern District of California

5

1   In sum, defendant has shown that plaintiff is unable to prove a prima facie case of age

2   discrimination, because plaintiff has no evidence that she was terminated on account of her age.

3   This order need not consider the parties' arguments concerning the second and third steps of the

4   age discrimination analysis.  Defendant's motion for summary judgment on plaintiff's claim for

5   age discrimination is **GRANTED**.

6           **2.     CLAIM FOR DISABILITY DISCRIMINATION.**

7           Plaintiff alleges that defendant also violated California's Fair Employment and Housing

8   Act by subjecting her to "less favorable terms and conditions of employment than afforded

9   similarly situated non-disabled employees because of his [*sic*] disability" (Compl. ¶¶ 9–25).  The

10  three-stage burden-shifting test described with reference to plaintiff's age discrimination claim

11  also applies to this claim for disability discrimination.  *See Guz*, 24 Cal. 4th at 354.  Again,

12  plaintiff fails at step one.

13          To establish a prima facie case of disability discrimination under California's FEHA,

14  plaintiff must present evidence that she (1) suffered from a disability or was regarded as suffering

15  from a disability, (2) could perform the essential duties of her job with or without reasonable

16  accommodations, and (3) was subjected to an adverse employment action *because of the*

17  *disability or perceived disability*.  *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310

18  (2010) (emphasis added).  Defendant argues that plaintiff cannot carry her burden of establishing

19  a prima facie case of disability discrimination because no evidence shows a causal link between

20  defendant's back injury and the termination of her employment.  Again, defendant contends that

21  the record generally and plaintiff's deposition testimony specifically contain no indication that

22  plaintiff's employment was terminated *because of* her back injury (Br. 14).

23          In response, plaintiff cites nothing.  Indeed, the opposition brief does not even address

24  defendant's argument that plaintiff cannot make a prima facie showing of disability

25  discrimination.  Plaintiff's *declaration* supporting the opposition brief states:  "On

26  December 17, 2008, Defendant informed me that I was terminated due an alleged failure to

27  perform because of my disability." (Krieg Decl. ¶ 3).  In deposition, however, plaintiff directly

28  contradicted that statement (Maechtlen Exh. A at 144–45):

*United States District Court*
For the Northern District of California

6

1    
2    
3    
4    
5    
6    
7    
8    
9    
10    
11    
12    
13    
14    
15    
16    
17    
18    
19    
20    
21    
22    
23    
24    
25    
26    
27    
28    

United States District Court
For the Northern District of California

> Q.     It [the complaint] states, "On December 17, 2008, Defendant informed Plaintiff" — Defendant meaning U.S. Foodservice — "informed Plaintiff" — meaning you — and this is what I was interested in knowing about — "that she was terminated due to an alleged failure to perform because of her physical disability."
>        Did anyone tell you that you were terminated due to your failure to perform because of your physical disability?
>
> A.     No.
>
> Q.     So that's not an accurate statement?
>
> A.     No, but the assumption was there.
>
> Q.     Okay.  You assumed that?
>
> A.     Yes.
>
> Q.     But nobody told you that; correct?
>
> A.     No.

Plaintiff also testified that when she was terminated "they told me my job was eliminated," and she confirmed that no other reasons were given for her termination (*id.* at 147–48).

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Here, plaintiff directly contradicted the above statement from her declaration and admitted that it was inaccurate in her earlier deposition testimony.  Plaintiff does not claim to have corrected or amended her deposition testimony.  This order finds that plaintiff's declaration statement "On December 17, 2008, Defendant informed me that I was terminated due an alleged failure to perform because of my disability" was a sham.  It is therefore **STRICKEN**.  *See Kennedy*, 952 F.2d at 267.

Plaintiff's declaration also states that her supervisor complained about the work restrictions from Dr. Nord (Krieg Decl. ¶ 3).  This, too, is a sham.  Plaintiff directly contradicted this statement in her earlier deposition testimony (Maechtlen Exh. A at 131) (emphasis added):

> Q.     Did any person from U.S. Foodservice tell you that you would not be able to meet the restrictions that were set forth in Exhibit 25 [the release forms from Dr. Nord]?
>
> A.     No, not that I recall.

United States District Court

For the Northern District of California

> Q.      Or that they — *did any person object to the work restrictions set forth in Exhibit 25 from U.S. Foodservice?*
>
> O.      Objection.  Calls for a legal conclusion, but you can answer.
>
> A.      *Not that I'm aware of.*
>
> Q.      Did any one person from U.S. Foodservice express any concern that you wouldn't be able to do your job because you have these work restrictions that are set forth in Exhibit 25?
>
> A.      No.

The statement in plaintiff's declaration that her supervisor complained about her work restrictions is therefore **STRICKEN**.  *See Kennedy*, 952 F.2d at 267.  Nothing else in plaintiff's declaration suggests a discriminatory motive for her termination.

As stated above, plaintiff's supplementary brief argues that new evidence creates factual issues as to whether defendant's stated reasons for firing plaintiff were pretext.  Again, however, pretext is step three of the discrimination analysis.  Plaintiff's supplementary brief also cites the declaration of Fran LaGrange to show that defendant "has fired other workers like plaintiff who were disabled at the time of the termination" (Supp. Br. 11).  Fran LaGrange, however, was not mentioned in any of plaintiff's Rule 26 disclosures or interrogatory responses (Dkt. Nos. 90, 90-1, 90-2).[*]  Accordingly, testimony from Ms. LaGrange is not admissible.  FRCP 37(c)(1).

Even with the benefit of additional depositions, plaintiff cannot establish that she was terminated *because* of her back injury, and she therefore cannot establish a prima facie case of disability discrimination.  Defendant's motion for summary judgment on plaintiff's claim for disability discrimination is **GRANTED**.

Because plaintiff failed to establish a prima facie case of disability discrimination at the first step of the discrimination analysis, this order need not consider defendant's arguments concerning the second and third steps of the analysis.  This order also need not reach defendant's argument that plaintiff's back injury did not qualify as a disability under the statute, nor

---

[*] Defendant's request for judicial notice of these items is **GRANTED**.

United States District Court

For the Northern District of California

1    defendant's argument that plaintiff abandoned her claim for disability discrimination by not

2    addressing it in her opposition brief.

3              **3.        CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.**

4              Plaintiff alleges that the termination of her employment was "in violation of the public

5    policy against discrimination on the basis of disability" (Compl. ¶¶ 39–47).  This order, however,

6    already found that plaintiff cannot show that her employment was terminated because of her age

7    or her back injury.  Plaintiff therefore cannot prove her wrongful termination claim, either.

8              Plaintiff argues that instead of terminating her employment, defendant should have offered

9    her a position in its transitional work program for employees with work-related injuries

10   (Opp. 12).  Since plaintiff cannot show that she was terminated *because* of her injury, the

11   transitional work program is irrelevant.  Plaintiff's other arguments are also unavailing.  The cited

12   portions of plaintiff's declaration and the arguments concerning pretext fail to create a genuine

13   issue of material fact for the reasons discussed above (*id.* at 13).  The theory that defendant did

14   not decide to terminate plaintiff's employment until December 17, 2008 — the day plaintiff

15   actually was terminated — is supported only by a December 17 email regarding general layoff

16   procedures (Opp. 12; Monier Exh. C).  The email does not mention plaintiff or any other specific

17   employees or termination decisions.  No reasonable fact finder could infer from this email that the

18   decision to terminate plaintiff's employment was made after her injury occurred.

19             Defendant's motion for summary judgment on plaintiff's claim for wrongful termination

20   is **GRANTED**.  This order does not reach defendant's arguments that this claim merely duplicates

21   other claims and that plaintiff cannot establish disability for purposes of this claim.

22             **4.        CLAIM FOR FAILURE TO ACCOMMODATE DISABILITY.**

23             Plaintiff alleges that defendant failed to make reasonable accommodations for her physical

24   disability in violation of Section 12940(k) of the California Government Code.  Plaintiff states

25   that "Defendants [*sic*] refused to engage in a good faith, interactive process to continue to

26   accommodate his [*sic*] disability" and that "Defendants [*sic*], through their agents and employees,

27   refused to discuss any reasonable accommodation with Plaintiff, refusing to engage in an

28   interactive process with him [*sic*] about it and thereby failed to act in good faith"

(Compl. ¶¶ 26–38).  Both parties move for summary judgment on this claim, arguing primarily whether or not plaintiff's back injury was a disability under the relevant statute.  Even assuming plaintiff could prove that her injury was a disability, her claim for failure to accommodate is unsupportable.

Defendant *did* accommodate plaintiff's back injury.  Plaintiff testified that after her injury, defendant arranged for a coworker to carry the boxes of scanned invoice bundles away from her desk, and that she was able to complete all of her other job duties within the restrictions from Dr. Nord (Maechtlen Exh. A at 132–34).  Plaintiff does not identify any other respect in which defendant should have accommodated her back injury during her employment.  As stated, plaintiff cannot show that her employment was terminated *because* of her back injury, so the question of accommodating her injury as an *alternative* to termination is not in play.

Plaintiff advances two theories regarding defendant's alleged failure to accommodate plaintiff's supposed disability.  *First*, plaintiff argues that defendant failed to "initiate an interactive process" that would engage plaintiff in a collaborative attempt to determine whether there was work available that she could perform with her supposed disability.  *Second*, plaintiff argues that defendant failed to offer plaintiff modified work.  Plaintiff bases both theories on defendant's failure to offer plaintiff a position in its "transitional return to work program," which provided temporary light work assignments to employees who were unable to perform some or all of their normal duties because of occupational injury or illness (Br. 7–11; Opp. 7–11).

Plaintiff's focus on the transitional program is misplaced.  Because plaintiff was able to perform her normal job with the accommodation defendant provided, there was no reason to discuss or offer the possibility of a temporary alternative assignment.  That is, plaintiff's injury *already was accommodated* through the modifications to the way she did her job.  We must remember that scanning was her main function and lifting was a minor incidental part of her job, which was easily accommodated.  And, since plaintiff's employment was not terminated *because* of her injury, there was no need to discuss or offer the transitional program as an alternative to termination.  Plaintiff cites *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 265 (2000), for the proposition that plaintiff was entitled to "'preferential consideration' in reassignment of

10

existing employees" (Opp. 8).  The cited portion of *Jensen*, however, addresses a situation in which an employer rejected an allegedly disabled employee for positions for which she was qualified because it had applicants who were more qualified or had seniority.  No such facts are present here.

Regarding plaintiff's claim for failure to accommodate disability, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.  This order does not decide whether plaintiff's back injury qualified as a disability for purposes of this claim.  This order also does not reach defendant's arguments concerning pleading defects and exhaustion of administrative remedies for this claim.

**5.    CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiff alleges that defendant intentionally inflicted emotional distress upon plaintiff through "extreme and outrageous conduct" that "includes, but is not limited to, the following: terminating Plaintiff's employment because of her disability" (Compl. ¶¶ 48–55).  The tort of intentional infliction of emotional distress has the following elements:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  Here, defendant argues that plaintiff cannot establish a prima facie case because she cannot show either outrageous conduct or severe distress.

A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community" and is "intended to inflict injury or engaged in with the realization that injury will result."  *Id.* at 1050–51.  Here, plaintiff has not identified any conduct that a reasonable trier of fact could find to be outrageous.  On the contrary, plaintiff has failed even to make a prima facie showing that her employment was terminated because of her age or alleged disability.  Plaintiff offers only conclusory legal argument such as:  "Clearly, defendants [*sic*] illegal actions were outrageous and an abuse of its position." (Opp. 15).  Plaintiff does not cite to *any* supporting facts.

United States District Court

For the Northern District of California

Plaintiff is unable to make a prima facie showing of intentional infliction of emotional distress because plaintiff has presented no evidence of outrageous conduct by defendant. Accordingly, defendant's motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress is **GRANTED**. This order need not consider defendant's arguments concerning the severe distress element of the tort. This order also need not reach defendant's arguments that this claim is preempted by the California Workers' Compensation Act and that it is undermined by the failure of other claims in the complaint.

\*          \*          \*

This order need not reach defendant's arguments concerning punitive damages and estoppel based on statements in plaintiff's applications for state and federal disability benefits. To the extent not specifically addressed herein, all requests for judicial notice and evidentiary objections are **MOOT**. Plaintiff's discovery grievance and request to conduct additional discovery are **MOOT** because plaintiff was allowed to take two depositions after the summary judgment hearing and this order does not rely on any of the documents that plaintiff claims were not timely produced.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is **GRANTED**, and plaintiff's motion for partial summary judgment is **DENIED**. Judgment will be entered accordingly. To the extent not specifically addressed herein, all requests for judicial notice and evidentiary objections are **MOOT**. Plaintiff's discovery grievance and request to conduct additional discovery are also **MOOT**.

**IT IS SO ORDERED.**

Dated:  September 14, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12