IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA KRIEG,<br><br>　　　Plaintiff,<br><br>　v.<br><br>U.S. FOODSERVICE, INC.,<br><br>　　　Defendant.<br>_____ / | No. C 10-02491 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

In this disability and age discrimination action, defendant moves for summary judgment on all claims, and plaintiff moves for summary judgment on one claim. For the reasons set forth below, and after careful consideration of the supplemental submissions, defendant's motion is **GRANTED**, and plaintiff's motion is **DENIED**.

## STATEMENT

Plaintiff Donna Krieg was hired by defendant U.S. Foodservice, Inc., a private company, in April 2004. From June 2006 until the termination of her employment in December 2008, plaintiff worked as a clerical assistant in the finance department at its San Francisco division (Maechtlen Exh. A at 45–47, 50, 137).

As a clerical assistant, "invoice scanning" was "the majority of [plaintiff's] job," making up about "95 percent" of what she did (*id.* at 51–52). Invoices were "brought to [her] in mail crates." She would gather bunches of invoices from the same date and then "put them in the

1  scanner and make sure they [were] not torn or ripped." She repaired any tears or rips she found.
2  After the invoices were scanned, plaintiff "would bundle them and put a cover sheet on it." She
3  would place the bundle of scanned invoices into a box on the left side of her desk and then repeat
4  the process with a new set of invoices gathered from the mail crates. When the box of completed
5  bundles became full, plaintiff "picked up the box and moved it to the left of [her work area] near
6  the window" — a distance of "[m]aybe three feet" (*id.* at 54–62). Plaintiff typically produced
7  three boxes of completed bundles per day; each box corresponded to one crate of invoices
8  (*id.* at 106–07).

9  In March 2008, representatives from defendant's corporate offices began discussing with
10 division managers goals for closing the gap between projected income and actual income in the
11 wake of the national economic recession (Monier Decl. ¶ 7). In June 2008, defendant purchased a
12 proof-of-delivery system, which made the majority of defendant's billing process paperless,
13 supposedly eliminating the need for a full-time employee to manually scan invoices (*id.* at ¶ 8).
14 In October 2008, corporate representatives and division managers began discussing the need to
15 downsize defendant's labor force due to defendant's economic circumstances (*id.* at ¶ 10).
16 In November 2008, plaintiff's job supposedly was selected for elimination by the end of the
17 calendar year (*id.* at ¶ 11).

18 On the morning of December 4, 2008, plaintiff injured her back at work. She bent over to
19 pick up a crate of invoices, grabbed it by the holes on the sides, brought it up, and then "felt
20 excruciating pain" (Maechtlen Exh. A at 107–08). Plaintiff immediately reported the injury to her
21 supervisor, took some painkillers from a first aid kit in the employee lounge, and then returned to
22 her scanning duties (*id.* at 111–12). Later that day, plaintiff saw Dr. Nord, "the doctor that U.S.
23 Food sends employees who have injured themselves" (*id.* at 115). Dr. Nord released plaintiff to
24 return to work with the restrictions of not lifting more than five pounds and not bending or
25 stooping for the period of December 4 through December 8 (*id.* at 120, Exh. 25).

26 During the period of December 4 through December 8, plaintiff continued to perform her
27 job within the restrictions from Dr. Nord. Plaintiff carried invoices from the mail crates to her
28 workstation in small, lightweight stacks, and a coworker removed the boxes of completed invoice

2

1  bundles from plaintiff's desk (*id*. at 132–34). On December 8, plaintiff saw Dr. Nord again. At
2  this second visit, Dr. Nord released plaintiff to return to work with the restrictions of not lifting
3  more than eight pounds and no frequent bending or lifting for the period of December 8 through
4  December 15 (*id.* at 124–25, Exh. 25). Plaintiff continued to perform her job, as modified, during
5  that period. On December 15, plaintiff saw Dr. Nord a third time and was released to work with
6  the same restrictions through December 22 (*id.* at 126–27, Exh. 25). On December 17, however,
7  plaintiff was told by her supervisor and a human resources representative that her job had been
8  eliminated. Her employment with defendant ended that day (*id.* at 137–38).

9  In December 2009, a little over a year later, plaintiff filed this action in the Alameda
10  Country Superior Court. Defendant removed the action here in June 2010 on the basis of
11  diversity jurisdiction. The complaint asserts five claims for relief: (1) disability discrimination;
12  (2) failure to accommodate disability; (3) wrongful termination in violation of public policy;
13  (4) intentional infliction of emotional distress; and (5) age discrimination (Dkt. No. 1). Defendant
14  now moves for summary judgment on all five claims, and plaintiff moves for summary judgment
15  on the claim for failure to accommodate disability (Dkt. Nos. 40, 54).

16  This order follows full briefing, a hearing, and supplemental discovery and briefing.
17  Plaintiff, who did not take any depositions during the discovery period, was allowed to take two
18  depositions after the summary judgment hearing due to the appearance of possible discovery
19  stonewalling by defendant. Each side submitted supplemental briefing and evidence after
20  the depositions.

**ANALYSIS**

22  Summary judgment is proper when "there is no genuine dispute as to any material fact and
23  the movant is entitled to judgment as a matter of law." FRCP 56(a). A dispute is "genuine" only
24  if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.
25  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory statements without
26  factual support cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097,
27  1103 (9th Cir. 2008).

3

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *Id.* at 1102–03.

### 1. CLAIM FOR AGE DISCRIMINATION.

Plaintiff, who is 62 years of age, alleges that defendant violated California's Fair Employment and Housing Act by subjecting her to "less favorable terms and conditions of employment than afforded similarly situated younger employees because of her age" (Compl. ¶¶ 56–70). "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). *First*, plaintiff has "the initial burden to establish a prima facie case of discrimination." *Second*, if "plaintiff establishes a prima facie case, a presumption of discrimination arises" and "the burden shifts to the employer to rebut the presumption." *Third*, if the employer successfully rebuts the presumption, then "the presumption of discrimination disappears" and "plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* at 354–56.

To make a prima facie showing of age discrimination, plaintiff must prove (1) that she was more than forty years of age, (2) that she was performing competently as a clerical assistant, (3) that she suffered an adverse employment action, and (4) that some other circumstance suggests discriminatory motive for the adverse action. CAL. GOV'T CODE § 12926(b);

4

*Guz*, 24 Cal. 4th at 355.  Defendant asserts that plaintiff cannot carry her burden of establishing a prima facie case of age discrimination because no evidence suggests a discriminatory motive for plaintiff's termination.  Defendant argues, for example, that plaintiff's deposition is devoid of any testimony indicating that she lost her job because of her age (Br. 14–15).

In response, plaintiff does not cite any evidence that would support an inference of discriminatory motive.  Plaintiff claims that she was fired "in retaliation for [her] exercise of protected rights under California law," but this conclusory statement is unsupported by *any* citation to the factual record (Opp. 16).  Pure lawyer argument cannot defeat summary judgment.  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Plaintiff also argues that defendant's stated reasons for terminating plaintiff's employment — that her job was eliminated by the new proof-of-delivery system and as part of a company-wide layoff program — were merely pretext.  The question of pretext, however, is the third step of the discrimination analysis.  It is not considered unless plaintiff identifies a prima facie case of discrimination *and* defendant provides a legitimate reason for its action.  Because plaintiff fails to establish a prima facie case of discrimination at the first step of the analysis, the question of pretext is not reached.  *See Guz*, 24 Cal. 4th at 354 (explaining that the first step of the analysis "is designed to eliminate at the outset the most patently meritless claims").  Plaintiff's supplementary brief cites new evidence, arguing that factual questions now exist as to whether defendant's stated reasons for firing plaintiff were pretext.  Again, however, pretext is step three.  Plaintiff's supplemental brief and opposition brief both neglect step one.  They cite no evidence from which a trier of fact could infer a discriminatory motive.

The fact that plaintiff was over forty years of age when her employment was terminated is not enough to make a prima facie showing of age discrimination.  *See Guz*, 24 Cal. 4th at 355.  Plaintiff does not contest that a prima facie showing of discrimination requires *some circumstance* suggesting discriminatory motive, even if there is no direct evidence of discrimination (Opp. 15).

5

1  In sum, defendant has shown that plaintiff is unable to prove a prima facie case of age
2  discrimination, because plaintiff has no evidence that she was terminated on account of her age.
3  This order need not consider the parties' arguments concerning the second and third steps of the
4  age discrimination analysis.  Defendant's motion for summary judgment on plaintiff's claim for
5  age discrimination is **GRANTED**.

### 2. CLAIM FOR DISABILITY DISCRIMINATION.

Plaintiff alleges that defendant also violated California's Fair Employment and Housing Act by subjecting her to "less favorable terms and conditions of employment than afforded similarly situated non-disabled employees because of his [*sic*] disability" (Compl. ¶¶ 9–25).  The three-stage burden-shifting test described with reference to plaintiff's age discrimination claim also applies to this claim for disability discrimination.  *See Guz*, 24 Cal. 4th at 354.  Again, plaintiff fails at step one.

To establish a prima facie case of disability discrimination under California's FEHA, plaintiff must present evidence that she (1) suffered from a disability or was regarded as suffering from a disability, (2) could perform the essential duties of her job with or without reasonable accommodations, and (3) was subjected to an adverse employment action *because of the disability or perceived disability*.  *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010) (emphasis added).  Defendant argues that plaintiff cannot carry her burden of establishing a prima facie case of disability discrimination because no evidence shows a causal link between defendant's back injury and the termination of her employment.  Again, defendant contends that the record generally and plaintiff's deposition testimony specifically contain no indication that plaintiff's employment was terminated *because of* her back injury (Br. 14).

In response, plaintiff cites nothing.  Indeed, the opposition brief does not even address defendant's argument that plaintiff cannot make a prima facie showing of disability discrimination.  Plaintiff's *declaration* supporting the opposition brief states:  "On December 17, 2008, Defendant informed me that I was terminated due an alleged failure to perform because of my disability." (Krieg Decl. ¶ 3).  In deposition, however, plaintiff directly contradicted that statement (Maechtlen Exh. A at 144–45):

6

> Q. It [the complaint] states, "On December 17, 2008, Defendant informed Plaintiff" — Defendant meaning U.S. Foodservice — "informed Plaintiff" — meaning you — and this is what I was interested in knowing about — "that she was terminated due to an alleged failure to perform because of her physical disability."
> Did anyone tell you that you were terminated due to your failure to perform because of your physical disability?
>
> A. No.
>
> Q. So that's not an accurate statement?
>
> A. No, but the assumption was there.
>
> Q. Okay. You assumed that?
>
> A. Yes.
>
> Q. But nobody told you that; correct?
>
> A. No.

Plaintiff also testified that when she was terminated "they told me my job was eliminated," and she confirmed that no other reasons were given for her termination (*id.* at 147–48).

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Here, plaintiff directly contradicted the above statement from her declaration and admitted that it was inaccurate in her earlier deposition testimony. Plaintiff does not claim to have corrected or amended her deposition testimony. This order finds that plaintiff's declaration statement "On December 17, 2008, Defendant informed me that I was terminated due an alleged failure to perform because of my disability" was a sham. It is therefore **STRICKEN**. *See Kennedy*, 952 F.2d at 267.

Plaintiff's declaration also states that her supervisor complained about the work restrictions from Dr. Nord (Krieg Decl. ¶ 3). This, too, is a sham. Plaintiff directly contradicted this statement in her earlier deposition testimony (Maechtlen Exh. A at 131) (emphasis added):

> Q. Did any person from U.S. Foodservice tell you that you would not be able to meet the restrictions that were set forth in Exhibit 25 [the release forms from Dr. Nord]?
>
> A. No, not that I recall.

7

>    Q. Or that they — *did any person object to the work restrictions set forth in Exhibit 25 from U.S. Foodservice?*
>
>    O. Objection. Calls for a legal conclusion, but you can answer.
>
>    A. *Not that I'm aware of.*
>
>    Q. Did any one person from U.S. Foodservice express any concern that you wouldn't be able to do your job because you have these work restrictions that are set forth in Exhibit 25?
>
>    A. No.

The statement in plaintiff's declaration that her supervisor complained about her work restrictions is therefore **STRICKEN**. *See Kennedy*, 952 F.2d at 267. Nothing else in plaintiff's declaration suggests a discriminatory motive for her termination.

As stated above, plaintiff's supplementary brief argues that new evidence creates factual issues as to whether defendant's stated reasons for firing plaintiff were pretext. Again, however, pretext is step three of the discrimination analysis. Plaintiff's supplementary brief also cites the declaration of Fran LaGrange to show that defendant "has fired other workers like plaintiff who were disabled at the time of the termination" (Supp. Br. 11). Fran LaGrange, however, was not mentioned in any of plaintiff's Rule 26 disclosures or interrogatory responses (Dkt. Nos. 90, 90-1, 90-2).[*] Accordingly, testimony from Ms. LaGrange is not admissible. FRCP 37(c)(1).

Even with the benefit of additional depositions, plaintiff cannot establish that she was terminated *because* of her back injury, and she therefore cannot establish a prima facie case of disability discrimination. Defendant's motion for summary judgment on plaintiff's claim for disability discrimination is **GRANTED**.

Because plaintiff failed to establish a prima facie case of disability discrimination at the first step of the discrimination analysis, this order need not consider defendant's arguments concerning the second and third steps of the analysis. This order also need not reach defendant's argument that plaintiff's back injury did not qualify as a disability under the statute, nor

---

[*] Defendant's request for judicial notice of these items is **GRANTED**.

8

1 defendant's argument that plaintiff abandoned her claim for disability discrimination by not
2 addressing it in her opposition brief.

### 3. CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

Plaintiff alleges that the termination of her employment was "in violation of the public policy against discrimination on the basis of disability" (Compl. ¶¶ 39–47). This order, however, already found that plaintiff cannot show that her employment was terminated because of her age or her back injury. Plaintiff therefore cannot prove her wrongful termination claim, either.

Plaintiff argues that instead of terminating her employment, defendant should have offered her a position in its transitional work program for employees with work-related injuries (Opp. 12). Since plaintiff cannot show that she was terminated *because* of her injury, the transitional work program is irrelevant. Plaintiff's other arguments are also unavailing. The cited portions of plaintiff's declaration and the arguments concerning pretext fail to create a genuine issue of material fact for the reasons discussed above (*id.* at 13). The theory that defendant did not decide to terminate plaintiff's employment until December 17, 2008 — the day plaintiff actually was terminated — is supported only by a December 17 email regarding general layoff procedures (Opp. 12; Monier Exh. C). The email does not mention plaintiff or any other specific employees or termination decisions. No reasonable fact finder could infer from this email that the decision to terminate plaintiff's employment was made after her injury occurred.

Defendant's motion for summary judgment on plaintiff's claim for wrongful termination is **GRANTED**. This order does not reach defendant's arguments that this claim merely duplicates other claims and that plaintiff cannot establish disability for purposes of this claim.

### 4. CLAIM FOR FAILURE TO ACCOMMODATE DISABILITY.

Plaintiff alleges that defendant failed to make reasonable accommodations for her physical disability in violation of Section 12940(k) of the California Government Code. Plaintiff states that "Defendants [*sic*] refused to engage in a good faith, interactive process to continue to accommodate his [*sic*] disability" and that "Defendants [*sic*], through their agents and employees, refused to discuss any reasonable accommodation with Plaintiff, refusing to engage in an interactive process with him [*sic*] about it and thereby failed to act in good faith"

9

(Compl. ¶¶ 26–38). Both parties move for summary judgment on this claim, arguing primarily whether or not plaintiff's back injury was a disability under the relevant statute. Even assuming plaintiff could prove that her injury was a disability, her claim for failure to accommodate is unsupportable.

Defendant *did* accommodate plaintiff's back injury. Plaintiff testified that after her injury, defendant arranged for a coworker to carry the boxes of scanned invoice bundles away from her desk, and that she was able to complete all of her other job duties within the restrictions from Dr. Nord (Maechtlen Exh. A at 132–34). Plaintiff does not identify any other respect in which defendant should have accommodated her back injury during her employment. As stated, plaintiff cannot show that her employment was terminated *because* of her back injury, so the question of accommodating her injury as an *alternative* to termination is not in play.

Plaintiff advances two theories regarding defendant's alleged failure to accommodate plaintiff's supposed disability. *First*, plaintiff argues that defendant failed to "initiate an interactive process" that would engage plaintiff in a collaborative attempt to determine whether there was work available that she could perform with her supposed disability. *Second*, plaintiff argues that defendant failed to offer plaintiff modified work. Plaintiff bases both theories on defendant's failure to offer plaintiff a position in its "transitional return to work program," which provided temporary light work assignments to employees who were unable to perform some or all of their normal duties because of occupational injury or illness (Br. 7–11; Opp. 7–11).

Plaintiff's focus on the transitional program is misplaced. Because plaintiff was able to perform her normal job with the accommodation defendant provided, there was no reason to discuss or offer the possibility of a temporary alternative assignment. That is, plaintiff's injury *already was accommodated* through the modifications to the way she did her job. We must remember that scanning was her main function and lifting was a minor incidental part of her job, which was easily accommodated. And, since plaintiff's employment was not terminated *because* of her injury, there was no need to discuss or offer the transitional program as an alternative to termination. Plaintiff cites *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 265 (2000), for the proposition that plaintiff was entitled to "'preferential consideration' in reassignment of

10

existing employees" (Opp. 8). The cited portion of *Jensen*, however, addresses a situation in which an employer rejected an allegedly disabled employee for positions for which she was qualified because it had applicants who were more qualified or had seniority. No such facts are present here.

Regarding plaintiff's claim for failure to accommodate disability, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**. This order does not decide whether plaintiff's back injury qualified as a disability for purposes of this claim. This order also does not reach defendant's arguments concerning pleading defects and exhaustion of administrative remedies for this claim.

### 5. CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff alleges that defendant intentionally inflicted emotional distress upon plaintiff through "extreme and outrageous conduct" that "includes, but is not limited to, the following: terminating Plaintiff's employment because of her disability" (Compl. ¶¶ 48–55). The tort of intentional infliction of emotional distress has the following elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Here, defendant argues that plaintiff cannot establish a prima facie case because she cannot show either outrageous conduct or severe distress.

A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community" and is "intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1050–51. Here, plaintiff has not identified any conduct that a reasonable trier of fact could find to be outrageous. On the contrary, plaintiff has failed even to make a prima facie showing that her employment was terminated because of her age or alleged disability. Plaintiff offers only conclusory legal argument such as: "Clearly, defendants [*sic*] illegal actions were outrageous and an abuse of its position." (Opp. 15). Plaintiff does not cite to *any* supporting facts.

11

1  Plaintiff is unable to make a prima facie showing of intentional infliction of emotional
2  distress because plaintiff has presented no evidence of outrageous conduct by defendant.
3  Accordingly, defendant's motion for summary judgment on plaintiff's claim for intentional
4  infliction of emotional distress is **GRANTED**. This order need not consider defendant's arguments
5  concerning the severe distress element of the tort. This order also need not reach defendant's
6  arguments that this claim is preempted by the California Workers' Compensation Act and that it
7  is undermined by the failure of other claims in the complaint.

\*      \*      \*

This order need not reach defendant's arguments concerning punitive damages and estoppel based on statements in plaintiff's applications for state and federal disability benefits. To the extent not specifically addressed herein, all requests for judicial notice and evidentiary objections are **MOOT**. Plaintiff's discovery grievance and request to conduct additional discovery are **MOOT** because plaintiff was allowed to take two depositions after the summary judgment hearing and this order does not rely on any of the documents that plaintiff claims were not timely produced.

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is **GRANTED**, and plaintiff's motion for partial summary judgment is **DENIED**. Judgment will be entered accordingly. To the extent not specifically addressed herein, all requests for judicial notice and evidentiary objections are **MOOT**. Plaintiff's discovery grievance and request to conduct additional discovery are also **MOOT**.

**IT IS SO ORDERED.**

Dated: September 14, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12